UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| CERTAIN UNDERWRITERS AT LLOYD'S, named individually herein, and ZURICH SPECIALTIES LONDON LTD, <br><br> Plaintiffs, <br><br> v. <br><br> MILBERG LLP, <br> MELVYN I. WEISS, individually, <br> DAVID J. BERSHAD, individually, <br> WILLIAM S. LERACH, individually, and <br> STEVEN G. SCHULMAN, individually. <br><br> Defendants. | '08 CIV 7522 <br><br> Civil Action No. _____ <br><br> COMPLAINT <br><br>  |

1. Plaintiffs are London-based insurers (the "London Insurers") who underwrote claims-made lawyers professional liability insurance issued for the period January 31, 2001 to January 31, 2004. The two insurance contracts at issue bore the numbers UP011988 and UP012204 (the "Contracts") and were placed by insurance brokers operating in the London insurance market at the request of predecessors to the Defendant Milberg LLP (including predecessors, "Milberg" or the "firm"). Plaintiffs bring this Complaint in support of their rescission of the Contracts based on material misrepresentations made in Milberg's application for this insurance. The misrepresentations included the false statement by the firm that none of its partners was aware of any circumstances as to any incident which may result in a claim being made against the firm or its partners.

2.     At the time the Contracts were made and thereafter, at least four partners of the firm, including the individually named Defendants, were engaged by their later admissions in a criminal enterprise in their law practice. The illegal acts included paying kickbacks to plaintiffs and witnesses and lying to the courts in order to be appointed by the courts as lead counsel in class actions, thereby obtaining higher fees for the firm and for themselves. These criminal acts were recently acknowledged by the firm in *United States of America v. Milberg LLP*, No. CR-05-587 JFW (C.D. Ca. June 16, 2008), in which the firm admitted and accepted responsibility for the criminal acts of the four partners covering a period from 1979 to 2005. These admitted facts have resulted in claims against the Defendants, including those alleged in *Linda Marshall, et al. v. Milberg LLP, et al.* No. 07 CV 6950 (LAP) (S.D.N.Y. filed Aug. 2, 2007), for which Defendants seek insurance benefits under the Contracts.

3.     The London Insurers are rescinding the Contracts because these subsequent admissions prove that representations in the insurance application and the Contracts were false. Had the truth been told and the facts of the long-running and later-admitted criminal conduct been presented at the time of contracting, the London Insurers would not have made the Contracts. The London Insurers bring this action seeking a declaration to confirm that the contracts are void *ab initio* and rescinded and, if necessary, to assure the orderly return of the premiums that have been tendered to Defendants and to obtain return of claim payments they have made under the Contracts during the time they were in existence.

## PARTIES

4.     Plaintiff Novae Corporate Underwriting Limited ("Novae") is an entity formed under the laws of England and Wales with a principal place of business in London, England. Novae is an underwriter at Lloyd's participating on Syndicate 1212, which was the lead

underwriter of insurance policy UP011988 with limits of $25 million excess of deductibles. Novae underwrote a proportionate share of Syndicate 1212's participation on that policy.

5. Plaintiff SOC Corporate Member No. 1 Limited ("SOC") is an entity formed under the laws of England and Wales with a principal place of business in London, England. SOC is an underwriter at Lloyd's participating on Syndicate 1173, which was the lead underwriter of insurance policy UP012204 with limits of $25 million excess of $50 million and the second underwriter on policy UP011988. SOC underwrote a proportionate share of Syndicate 1173's participation on those policies.

6. The plaintiffs individually identified in paragraphs 4 through 5 above are referred to collectively herein and in the caption as "Certain Underwriters at Lloyd's." Each of these plaintiffs appears here in its individual capacity only, not as a representative of other underwriters at Lloyd's, and its individual share of the insurance limits under the Contracts exceeds $75,000. All other underwriters who subscribed shares in the Contracts placed at Lloyd's have agreed to be bound by a judgment in favor of or against one or more of the Plaintiffs identified in paragraphs 4 through 5 above. *See E.R. Squibb & Sons, Inc. v. Lloyd's & Companies*, 241 F.3d 154, 160-61 (2d Cir. 2001).

7. Plaintiff Zurich Specialties London Ltd. ("Zurich") is incorporated in the United Kingdom and has its principal place of business in London, England. Zurich underwrote a proportionate share of the Contracts.

8. Defendant Milberg is a limited liability partnership organized under the laws of New York. Milberg maintains its principal place of business at One Pennsylvania Plaza, New York, New York, and is engaged in the practice of law. Upon information and belief, no partner of Milberg is a citizen of England. At various times in the past, Milberg was formerly known as

Milberg Weiss Bershad Hynes & Lerach, Milberg Weiss Bershad Hynes & Lerach LLP, Milberg Weiss Bershad Specthrie & Lerach, Milberg Weiss Bershad & Schulman LLP, Milberg Weiss & Bershad LLP and Milberg Weiss LLP. Milberg is the successor to those named firms and claims rights under the Contracts. Upon information and belief, the firm was founded in 1965 and has been organized as a limited liability partnership since 1996.

9. Defendant Melvyn I. Weiss is an individual currently residing in Oyster Bay, New York and is a former partner of the firm claiming rights under the Contracts.

10. Defendant David J. Bershad is an individual currently residing in Montclair, New Jersey and is a former partner of the firm claming rights under the Contracts.

11. Defendant William S. Lerach is an individual currently residing in the Federal Correctional Institute in Lompoc, California and is a former partner of the firm claiming rights under the Contracts.

12. Defendant Steven G. Schulman is an individual currently residing in New York, New York, and is a former partner of the firm claiming rights under the Contracts.

## JURISDICTION AND VENUE

13. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332, as there is complete diversity of citizenship between the parties, and the amount in controversy as to each plaintiff exceeds $75,000, exclusive of interest and costs.

14. Venue is proper in the Southern District of New York pursuant to 28 U.S.C. § 1391(a).

## **ALLEGATIONS**

A. **The Contracts**

15.  Milberg was and is a law firm that specializes in serving as plaintiff's counsel in class actions and shareholder derivative actions brought in courts throughout the United States.

16.  An entity seeking insurance in the London insurance market typically retains a London-based insurance broker to negotiate the placement on its behalf. The London broker prepares an underwriting slip for the proposed insurance that outlines the risk and presents information necessary to assess the risk and decide whether to enter the contract. In late 2000 or early 2001, a London broker then known as Alexander Forbes Risk Services UK Limited prepared typewritten underwriting slips for what became policy numbers UP011988 and UP012204. These slips were presented to the London Insurers for their review, discussion, amendment and, if agreed, acceptance for insurance. The slips proposed three-year policies that would have prepaid premium for the period from January 31, 2001 to January 31, 2004. Among the entries, the slips stated that the type of insurance sought was lawyers professional liability with an "APPLICATION DATED 16th November 1998 and declarations of claims and attorneys T.B.A. L/U only" (the "Application").

17.  The Application stated that it was being submitted "on behalf of all Owners, Partners, Shareholders, Corporate Officers and Employees" of the firm. The Application contained a Supplement 1 listing the lawyers working at the firm, including Defendants Bershad, Lerach, Schulman and Weiss. Section 10.C of the Application contained the following question:

> After enquiry, are any persons listed in the Supplement 1 aware of any circumstances, allegations, tolling agreements or contentions as to any incident which may result in a claim being made against the Applicant or any of its past or present Owners, Partners, Shareholders, Corporate Officers, Associates, Employed Lawyers, Contract Lawyers or Employees or its predecessors in business?

18. The firm answered "no" to that question. The firm did not alter this answer or otherwise provide information about the circumstances at issue in this Complaint in any subsequent submission to the London Insurers prior to the inception date of the Contracts or thereafter.

19. The Application was signed on the firm's behalf by Defendant Bershad with the following declarations and warranties:

> The Applicant declares and warrants that, after enquiry, to the best knowledge of all persons to be insured the statements set forth herein and in any attachments made hereto are true and no material facts have been surpressed [sic] [or] omitted or misstated. Underwriters reserve the right to deny or rescind coverage on any Policy hereto [if] it is found that material information has been omitted, surpressed [sic] or misstated. . . . Signing this application does not bind the Applicant or Underwriters to complete the Insurance, but it is agreed that the statements and particulars herein will be relied on by Underwriters should a Policy be issued.

Mr. Bershad's signature was the "AUTHORIZED SIGNATURE OF THE APPLICANT" law firm.

20. As of the day the Application was signed and continuing thereafter, partners of the firm, including but not limited to Defendants Bershad, Lerach, Schulman and Weiss, knew these representations were false and failed to disclose the truth to the London Insurers.

21. Relying on these misrepresentations, the London Insurers agreed to underwrite the Contracts. The London broker obtained issuance of policy UP011988 providing primary limits and a Schedule listing "Date of Application: 16th November 1998 and declarations of claims and attorneys." The policy wording stated under Application:

> By acceptance of this Policy, the Assured agrees that the statements in the Application are personal representations, that they shall be deemed material and that this Policy is issued in reliance upon the truth of such representations. . . .

Excess policy UP012204 followed the form of the primary wording and contained these provisions. Milberg paid premiums to the London Insurers and, as lawyers' professional liability claims arose under the Contracts, the London Insurers made claim payments to or for the benefit of Milberg and its partners for defense and/or indemnity of those claims.

**B.     The Criminal Acts Involving Milberg and Its Partners**

22.     During January of 2002, the firm gave notice to the London Insurers that it had received a subpoena to testify before a grand jury in California. The firm also reported receipt of a subpoena to testify in Pennsylvania later in the year. The London Insurers responded that the subpoenas were not "Claims" as defined in the Contracts. The firm said it was only an investigation and that the London Insurers should provide a defense. The parties to the Contracts entered into an Interim Funding Agreement to advance defense costs under agreed terms and without prejudice. Among other terms, this agreement permitted the London Insurers to seek repayment of the claim amounts advanced depending on future developments.

23.     On May 18, 2006, the United States Attorney indicted Defendant Milberg, Defendant Bershad, and Defendant Schulman. The charges in the indictment included bribery, obstruction of justice and perjury. The indicted Defendants, as well as those later indicted, publicly denied all charges and said they would prove them wrong in court. The Defendants reiterated this position many times over the next two years. The Defendants gave notice to the London Insurers who responded on July 14, 2006 that the criminal indictment did not constitute a Claim under the Contracts and denying that there was any obligation to defend or indemnify the allegations in the indictments. The London Insurers also reserved all rights to assert legal defenses as ascertained by later developments.

24. On June 16, 2008, Milberg resolved the criminal indictment by entering into a "Case Disposition Agreement for Defendant Milberg LLP" in the action styled *United States of America v. Milberg LLP*, No. CR 05-587(D) – JFW (C.D. Ca. June 16, 2008) (the "Case Disposition Agreement"). The Case Disposition Agreement was made between the United States Attorney and "Milberg LLP (formerly known as 'Milberg Weiss LLP,' 'Milberg Weiss & Bershad LLP,' 'Milberg Weiss Bershad & Schulman LLP,' 'Milberg Weiss Bershad Hynes & Lerach LLP,' and 'Milberg Weiss Bershad Specthrie & Lerach'). . . ."

25. Among other things, the Case Disposition Agreement required Milberg to pay a total of $75 million plus interest over time, in part to the United States Treasury and in part to the U.S. Postal Inspection Service Consumer Fraud Fund. Despite its unqualified position before June 16, 2008 that the firm was innocent and would prevail at trial, Milberg stated in the Case Disposition Agreement that it "acknowledges and accepts responsibility for the conduct of its partners as described in the Statement of Admitted Facts" attached to and incorporated in that agreement.

26. The Statement of Admitted Facts included the following:

   a. Beginning in or before 1979 and continuing into 2005, Defendants Weiss, Lerach, Bershad, Schulman and others who "exercised management authority over the Firm, agreed to and did secretly pay kickbacks to named plaintiffs in Class Actions in which the Firm served as counsel." The payments were "a portion of the attorneys' fees that the Firm obtained in Class Actions," and they "enabled the Firm to file more Class Actions" more quickly in order to obtain court appointments as lead counsel. An attached 11-page list identified by name 165 lawsuits in various state and federal courts in which these acts took place.

b. The payments were "illegal because they violated laws and regulations" that prohibit an attorney from (i) paying a person to maintain his or her lawsuit, (ii) paying a fiduciary class representative without the principals' consent, and (iii) sharing attorneys' fees with persons not licensed to practice law. The payments also created conflicts of interest among class representatives and members.

c. Defendants Weiss, Bershad, Lerach and Schulman "knew that the Firm's kickback payments . . . had to be concealed from the federal and state courts presiding over the Class Actions. . . ." These firm partners therefore "made and caused to be made false and misleading representations in complaints, motions, and other pleadings filed and caused to be filed by the Firm . . . ." The partners also paid the firm's plaintiffs to "lie when questioned concerning the existence of any payments or payment arrangements." This led to false statements in "under-oath testimony and in written certifications, declarations, and other documents signed under penalty of perjury in Class Actions."

d. Defendants Weiss, Bershad, Lerach and Schulman used fake "'referral fees'" and "'professional fees'" to disguise their kickback payments and to pay fees to stockbrokers to refer business in violation of the securities laws. The firm partners also illegally paid an expert on a contingency basis to testify falsely under oath and in declarations.

e. When they became aware of the criminal investigation by the United States Attorney's Office, the firm partners "failed to conduct an independent internal investigation into the allegations" against Defendants Weiss, Bershad, Lerach and Schulman who controlled firm management and "delayed taking adequate action to prevent such conduct from occurring in the future."

27. Defendant Weiss was indicted in September of 2007 and pled guilty to crimes in March of 2008; he has been sentenced to serve 2.5 years in federal prison. Defendant Schulman pled guilty in September of 2007 and is scheduled to be sentenced in October 2008. Defendant Lerach waived indictment and pled guilty in September 2007 and is now serving a 2-year sentence. Defendant Bershad pled guilty in July of 2007 and is scheduled to be sentenced in October 2008.

C.   **Claims Made Arising Out of Criminal Activity**

28. In August of 2007, certain plaintiffs filed a civil class action in the Southern District of New York styled *Linda Marshall, et al. v. Milberg LLP, et al.*, Case No. 07-CV-6950 (LAP) (S.D.N.Y. filed Aug. 2, 2008) ("*Marshall*"). The defendants in *Marshall* included the Defendants in this case, Milberg, Weiss, Bershad, Lerach, and Schulman. Among other things, the *Marshall* pleadings allege that the plaintiffs were members of classes represented by Milberg and unaware of its criminal conduct. The pleadings also allege that the firm and individual defendants were liable to the plaintiffs in money damages for the wrong done to plaintiffs by their conduct.

29. Following initial pleadings, the *Marshall* case was stayed for 120 days in November 2007. The Court granted a motion to intervene by the United States Government on March 31, 2008, which submitted that the *Marshall* case should not proceed until the resolution of the Government's pending criminal case against Milberg. On June 2, 2008, the Court ordered that counsel for the parties confer and report no later than June 30, 2008 concerning the status of the Government's criminal case against the firm. Counsel for the parties advised the Court of the Case Disposition Agreement on or before June 30, 2008, and the *Marshall* case is now proceeding in active litigation.

30.   Defendants gave notice of *Marshall* to the London Insurers as circumstances arising under the Contracts. The London Insurers agreed to fund the defense without prejudice and subject to full reservations of rights and refund. By letter dated March 18, 2008, the London Insurers detailed the rights being reserved pending developments, including but not limited to rescission of the Contracts.

### D.   Contemporaneous Action

31.   The London Insurers obtained and reviewed the Case Disposition Agreement and related documents from public sources and considered the facts admitted there. These facts confirm that Milberg misrepresented the truth when it applied for insurance under the Contracts and that at least four partners who controlled the firm prior to and during the period the Contracts were in effect knew of circumstances as to incidents which might and did result in claims being made under the Contracts. The London Insurers further determined from these facts that they would not have underwritten the Contracts if the truth had been told about the firm's criminal activity at the heart of its practice.

32.   The London Insurers are today filing this suit and contemporaneously writing to the Defendants rescinding the Contracts. In this connection the London Insurers' letter tenders to Defendants the premium paid for the Contracts. The premium is held in escrow, and, if Defendants jointly accept it within four weeks, this amount will be paid to their joint order. In the event that the tender is not accepted, the London Insurers include an interpleader count with respect to the premium. This Complaint and the London Insurers' letter also address Defendants' refund of claim payments for defense and indemnity paid thereunder in connection with rescission.

## **FIRST CAUSE OF ACTION**

### **Rescission**

33.     The London Insurers repeat and reallege the allegations contained in paragraphs 1 through 32 of this Complaint.

34.     Prior to completing the Application and thereafter, Milberg was engaged through Defendants Weiss, Bershad, Lerach and Schulman in concealed, systematic criminal conduct in the firm's law practice.  This conduct was known by the firm partners to be illegal and to benefit the firm monetarily at the expense of others.  These partners concealed this conduct by various means, including lies to the London Insurers and perjury before federal and state courts and by payments to witnesses so that they would give false testimony in those judicial proceedings.  These circumstances could and now have given to rise to the claims in *Marshall*, for which the Defendants seek coverage under the Contracts.

35.     Despite recent admissions in court that they were aware of these circumstances prior to completing the Application and thereafter, the partners who controlled Milberg, on behalf of the firm and themselves individually, knowingly and falsely stated that they were not aware of any incident that may result in a claim being made against them.  Instead, to induce the London Insurers to accept the Application, the firm represented that it was a highly professional firm specializing honestly in plaintiffs' class action work.  The Application and related representations were expressly incorporated in the underwriting slips and in the contract wording as material terms on which the London Insurers relied.

36.     These representations were material to contract formation.  Believing them to be true, the London Insurers reasonably relied on the representations made that have now been

shown by the firm's admission to be false. Had truthful answers been given and the firm's illegal conduct been disclosed, the London Insurers would not have underwritten the Contracts.

37.    The London Insurers are entitled to a declaration and order that these circumstances constitute valid grounds for rescission of the Contracts. The London Insurers are also entitled to a declaration and order that (i) the Contracts are void *ab initio* and (ii) the return of premium and claim payments detailed below are required in those circumstances.

38.    The London Insurers are further entitled to (i) a declaration and resolution via the interpleader count below that their tender back of the premium paid for the Contracts, if not resolved by joint agreement among the Defendants, is valid and (ii) a declaration and monetary award of damages in an amount not less than $4,800,000 with respect to claim payments for defense and indemnity paid to or for Defendants' benefit prior to rescission.

## SECOND CAUSE OF ACTION

### Reimbursement/Unjust Enrichment

39.    The London Insurers repeat and reallege the allegations contained in paragraphs 1 through 38 of this Complaint.

40.    In the alternative, if the claim payments made by the London Insurers are not returned as damages in connection with the rescission declaration, the London Insurers are entitled to recover those payments as reimbursement to prevent unjust enrichment.

41.    The London Insurers made certain claim payments under the Contracts under express agreement and/or reservation that they would be entitled to seek reimbursement based on future developments. Other claim payments were made on the understanding wrongly created by Milberg that the firm had accurately represented the risk prior to or during the time the Contracts

were in existence. Subsequent admissions of facts by the firm and its partners establish that this understanding was wrong and part of the fraud that Milberg was perpetrating in its law practice.

42. In reasonable reliance on Milberg's representations as to the risk and as to reimbursement of claim payments based on late developments, the London Insurers made claim payments of more than $4,800,000 to or for the benefit of Defendants under the Contracts.

43. In these circumstances, Defendants have been unjustly enriched at the expense of the London Insurers, and equity requires that the claim payments be returned to the London Insurers in connection with rescission of the Contracts.

### THIRD CAUSE OF ACTION

#### Interpleader

44. The London Insurers repeat and reallege the allegations contained in paragraphs 1 through 43 of this Complaint.

45. The London Insurers are tendering to Defendants with rescission the full amount of the premiums paid for the Contracts.

46. As stated in the Case Disposition Agreement, Defendants Weiss, Bershad, Lerach and Schulman were partners of Milberg for some or all of the period from January 31, 2001 to January 31, 2004, but none of them is a partner of the firm as of the date of this Complaint.

47. The London Insurers informed the Defendants that the tender of premium is being held in escrow pending their joint agreement and advice to the London Insurers that they accept the tender and jointly determined how the funds should be received. To the extent Defendants do not agree and advise within the four weeks specified in the tender, there will be potentially conflicting demands by the Defendants to those funds and potentially inconsistent claims unless the Court determines the respective rights in connection with rescission.

48.    In the event interpleader is required, the London Insurers will file a motion requesting that they be allowed to deposit into the Registry of the Court the entirety of the tendered premium for the Contracts pending an order of this Court directing how this sum should be distributed among the Defendants.

WHEREFORE, Plaintiffs request that the Court enter judgment:

(a) rescinding the Contracts and declaring that declaring them void *ab initio*;

(b) ordering Defendants to return to the London Insurers the claim payments made under the Contracts, as well as other applicable amounts due in connection with rescission and equity;

(c) determining as necessary how the London Insurers' tender of the premiums paid for the Contracts should be distributed among the Defendants; and

(d) granting the London Insurers such other and further relief as the Court may deem just and proper, including attorneys' fees and other costs and disbursements of this action.

Dated: New York, New York
August 26, 2008

ROPES & GRAY LLP

By: _____
David J. Przygoda (DP 0805)
1211 Avenue of the Americas
New York, NY 10036-8704
Telephone: (212) 596-9000
Fax: (212) 596-9090
E-mail: david.przygoda@ropesgray.com

Kenneth W. Erickson
Robert A. Skinner
One International Place
Boston, MA 02110
Telephone: (617) 951-7000
Fax: (617) 951-7050
E-mail: kenneth.erickson@ropesgray.com
         robert.skinner@ropesgray.com

*Attorneys for Plaintiffs*